UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x

In re:

**DÉCOR HOLDINGS, INC., et al.,**

       Post-Confirmation Debtors

---------------------------------------------------------- x

**BRYAN RYNIKER IN HIS CAPACITY AS
LITIGATION ADMINISTRATOR OF
THE POST CONFIRMATION ESTATES
OF DÉCOR HOLDINGS, INC., et al.,**

       Plaintiff-Appellant,

       -against-

**UNITED PARCEL SERVICE, INC.,**

       Defendant-Appellee.

---------------------------------------------------------- x

**OPINION & ORDER**

22-cv-04621 (NG)

**GERSHON, United States District Judge:**

      This matter arises from the voluntary Chapter 11 bankruptcy petition of Décor Holdings Inc. and its affiliated debtors (collectively, "Debtors"). On June 10, 2022, the bankruptcy court granted summary judgment in favor of Appellee United Parcel Service, Inc. ("UPS") and dismissed the adversary action brought by Appellant Bryan Ryniker, in his capacity as litigation administrator of the Debtors' post-confirmation estates ("Litigation Administrator"). At a hearing held on June 6, 2022, the bankruptcy court found that the executory contract at issue between Debtors and UPS had been assumed, and therefore granted summary judgment in favor of UPS, thus barring the Litigation Administrator's action seeking to avoid and recover certain transfers and to disallow claims. For the reasons discussed below, I affirm.

## I. BACKGROUND

The following facts and procedural history are derived from the bankruptcy record on appeal. Familiarity with the record in the underlying bankruptcy proceeding is assumed, and the court recounts only those facts necessary to resolve this appeal.

Prior to filing its Chapter 11 petition, Debtors had entered into an agreement with UPS (the "Carrier Agreement") for UPS to provide package pickup and delivery services. It is undisputed that, during the ninety days leading up to the filing of Debtors' Chapter 11 petition, UPS received payments for services provided under the Carrier Agreement. AP Dkt. 35 at 2.[1] It is also undisputed that Debtors have defaulted under the Carrier Agreement.

The voluntary Chapter 11 petition was filed on February 12, 2019. In due course, the bankruptcy court entered an order, among other things, approving the procedures for the assumption and assignment of certain executory contracts and unexpired leases. *See* Bankr. Dkt. 239. Pursuant to those procedures, Debtors filed with the bankruptcy court a notice listing certain executory contracts and unexpired leases that Debtors sought to assume and then assign to the buyer of its assets. Bankr. Dkt. 240. The list of contracts included the Carrier Agreement with a proposed $0.00 to cure the default. Bankr. Dkt. 240-1. The notice also reserved Debtors' rights not to assume and assign any of the listed contracts. UPS filed an objection to the proposed cure amount. Bankr. Dkt. 267

On April 26, 2019, Debtors filed a notice indicating that RADG Holdings, LLC ("Purchaser") was the purchaser of substantially all of Debtors' assets pursuant to the Asset Purchase Agreement ("APA"). Bankr. Dkt. 276. Appended to the notice was another list of

---

[1]"Bankr. Dkt." refers to the Chapter 11 case, *In re Décor Holdings, Inc.*, 19-bk-71020-reg (Bankr. E.D.N.Y.). "AP Dkt." refers to the adversary proceeding, *Ryniker v. United Parcel Service, Inc.*, No. 8-20-08134-reg. (Bankr. E.D.N.Y.).

proposed contracts that Debtor would assume ("Schedule of Proposed Contracts") and then assign to the Purchaser, which again included the Carrier Agreement with the "Final Cure Amount" as "TBD" and a reservation of rights that the "Parties are working to resolve the Cure Amount, failing which Buyer reserves the right to remove." Bankr. Dkt. 276-1 at 5. The sale closed on May 3, 2019. Bankr. Dkt. 310.

On the same day that the sale closed, Debtors filed the proposed Third Amended Joint Chapter 11 Plan of Liquidation ("Plan"). Bankr. Dkt. 296. On May 6, 2019, the bankruptcy court entered an order confirming the Plan ("Confirmation Order"). Bankr. Dkt. 303. Exhibit 1 to the Confirmation Order is the final executed version of the APA; Exhibit 2 is the Plan; and Exhibit 3 is a Schedule of Assumed Contracts & Cure Costs ("Schedule of Assumed Contracts"), which includes the Carrier Agreement. On May 9, 2019, the Notice of Effective Date was filed; it notes that the sale closed on May 3, 2019 and the Effective Date occurred on May 6, 2019. Bankr. Dkt. 310.

On August 25, 2020, the Litigation Administrator filed a complaint against UPS to avoid and recover transfers pursuant to 11 U.S.C. §§ 547, 548, and 550, and to disallow claims pursuant to 11 U.S.C. § 502. AP Dkt. 1 ("Compl."). Claiming they were preferential transfers, the Litigation Administrator seeks to avoid and recover from UPS payments made by Debtors to UPS during the ninety days before filing the Chapter 11 petition. Compl. ¶ 13. UPS moved for summary judgment on the basis that the Carrier Agreement had been assumed and assigned, thus barring the Litigation Administrator's preference action. AP Dkt. 26. On June 6, 2022, the bankruptcy court orally granted UPS's summary judgment motion. On June 24, 2022, the Litigation Administrator filed a motion for reconsideration. AP Dkt. 38. The court orally denied the Litigation Administrator's motion, and the Litigation Administrator brought this appeal.

## II. STANDARD OF REVIEW

"In reviewing judgments by the bankruptcy court, the district court functions as an appellate court." *United Gen. Title Ins. Co. v. Karanasos*, 561 B.R. 316, 322 (E.D.N.Y. 2016). On appeal, a bankruptcy court's decision granting summary judgment is reviewed *de novo*. *See Desert Palace, Inc. v. Baumblit (In re Baumblit)*, 251 B.R. 442, 443 (E.D.N.Y. 2000).

## III. DISCUSSION

The Bankruptcy Code gives a debtor the option to assume or reject executory contracts and unexpired leases. *See* 11 U.S.C. § 365(a). When a debtor seeks to assume a contract under which it has defaulted, the Bankruptcy Code imposes additional requirements. The debtor must (1) "cure[] or provide[] adequate assurance that [it] will promptly cure…default"; (2) "compensate[] or provide[] adequate assurance that [it] will promptly compensate, a party other than the debtor…for any actual pecuniary loss resulting from such default"; and (3) "provide[] adequate assurance of future performance under such contract or lease." 11 U.S.C. § 365(b)(1). Only the first requirement — cure or adequate assurance of cure — is at issue here.

The parties agree that, whether the Carrier Agreement was assumed pursuant to Section 365(b)(1) is dispositive because assumption of an executory contract bars a Section 547 preference action against the transferee for payments made in connection with the assigned contract.[2] *See Kimmelman v. Port Auth. Of New York and New Jersey (In re Kiwi Int'l Air Lines Inc.)*, 344 F.3d 311, 317 (3d Cir. 2003). The dispute in this case is whether the Carrier Agreement has been assumed pursuant to Section 365(b)(1). The bankruptcy court held that, regardless of whether there was payment of cure, the Carrier Agreement was assumed because the Purchaser's obligation

---

[2] The parties agree that, if the Litigation Administrator's preference claim is dismissed, his remaining claims cannot survive.

- 4 -

to pay the cure amount met the requirement to provide adequate assurance of prompt cure under Section 365(b)(1) and the Plan. I agree.

The Carrier Agreement was assumed pursuant to the plain language of the Plan and the APA, which was confirmed by the bankruptcy court's Confirmation Order. Article 7.1 of the Plan provides that "[s]ubject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval . . . of (i) the assumption of the leases and executory contracts listed on the Assumption Notice and (ii) the assignment of such leases and executory contracts to the Purchaser." Pursuant to the APA, the Purchaser agreed to assume certain of Debtors' liabilities, which included paying the cure costs for the assigned contracts. *See* APA § 2.3. The APA also provides that "[a]t the Closing, the Sellers shall have cured any and all defaults *or have provided adequate assurance that they will cure any and all defaults* with respect to Assigned Leases and Assigned Contracts as provided in [S]ection 365 of the Bankruptcy Code and as required by the Bankruptcy Court . . . , *it being understood that the Purchaser shall pay the Cure Costs for the Assigned Leases and Assigned Contracts*." APA § 3.6 (emphases added). Consistent with the Plan and the APA, the Confirmation Order approved assumption of the contracts listed in the Schedule of Assumed Contracts and acknowledged that the Purchaser would satisfy the Cure Costs in connection with the assigned contracts. *See, e.g.*, Confirmation Order ¶ 45 ("The Purchaser will cure, and have provided adequate assurance of cure . . . within the meaning of [S]ection 365(b)(1)(A) and (B) . . . as of the Closing Date"). All conditions precedent to assumption were met: the Schedule of Assumed Contracts lists the Carrier Agreement; the bankruptcy court entered the Confirmation Order approving the Plan; and the Effective Date occurred on May 6, 2019. Therefore, the Carrier Agreement was assumed.

Further, all requirements of Section 365(b) were met. Section 365(b)(1)(A) provides for the possibility that default will not be cured prior to assumption by providing the alternative of adequate assurance of prompt cure. *See* 11 U.S.C. § 356(b)(1)(A); 3 *Collier on Bankruptcy*, ¶ 365.06 (16th ed.) ("'[A]dequate assurance' [of a prompt cure] … is a substitute for the immediate taking of the action"). The Litigation Administrator acknowledges that this is another way to satisfy Section 365(b)(1)(A). Nonetheless, he argues that, in this case, adequate assurance was not an available option because a proper reading of the Confirmation Order eliminates that option. Under his reading, assumption can occur *only* if there has been payment of cure, and no evidence of cure has been presented. This argument is unpersuasive. As discussed, the APA contemplates that the Purchaser will pay the cure amounts. The Plan is clear that the contracts are assumed once the Plan is approved and the Effective Date has occurred. The Confirmation Order merely approved the Plan; nowhere in the Confirmation Order does the bankruptcy court suggest that it is imposing any requirements additional to those proposed by the Debtors. Nor could it, which the Litigation Administrator acknowledged at oral argument.[3] Therefore, the Confirmation Order, consistent with the Plan and the APA, and in compliance with the Bankruptcy Code, provides for adequate assurance of a prompt cure through the Purchaser's obligation to pay the cure amount.[4]

---

[3] *See Matter of Kain*, 86 B.R. 506, 520 (Bankr. W.D. Mich. 1988) ("This court does not have the power to rewrite a Chapter 11 plan . . . . The court's obligation is merely to determine whether any proposed plan complies with all confirmation standards set forth in 11 U.S.C. § 1129(a) and (b)."); *see also In re Snider Farms, Inc.*, 83 B.R. 977, 999 (Bankr. N.D. Ind. 1988) ("The [bankruptcy] [c]ourt cannot rewrite the Debtor's plan. It can only either deny or confirm the plan as written."); *In re Lockard*, 234 B.R. 484, 496 (Bankr. W.D. Mo. 1999) ("Whether fortunately or unfortunately, it is not the duty of the Court to write (or rewrite) a plan for a debtor.")

[4] The Litigation Administrator argues on reply that ordering payment of the cure amount does not suffice to provide adequate assurance of a prompt cure because there is no evidence that the Purchaser has "the means and resources to pay the cure amount" on the assumed contract. Although I need not consider arguments raised for the first time on reply, *Zap Cellular, Inc. v. Weintraub*, No. 15-cv-6723 (PKC) (VMS), 2022 WL 4325746, at *5 (E.D.N.Y. Sept. 19, 2022), any objections to the terms of the Plan and its compliance with the Bankruptcy Code, had to have

This is exactly how the bankruptcy court interpreted the Confirmation Order. At the hearing on UPS's motion for summary judgment, Bankruptcy Judge Grossman explained: "[t]he satisfaction of the requirement to make the cure payment is in fact the order for the purchaser to pay . . . . [M]y view . . . of my order—is that the cure was satisfied with the direction of the purchaser to make the payment." AP Dkt. 38-1 at 13:13-14:3. I acknowledge, as the bankruptcy court did itself, that there is certain language in the Confirmation Order that supports the Litigation Administrator's reading.[5] However, a "bankruptcy court's interpretation of its own order warrants customary appellate deference." *Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 333 (2d Cir. 1999). "Before confirming a Chapter 11 reorganization plan, a bankruptcy court must review the terms of the proposed plan to ensure that it complies with the applicable provisions of the [Bankruptcy] Code." *ReGen Cap. I, Inc. v. UAL Corp. (In re UAL Corp.)*, 635 F.3d 312, 319 (7th Cir. 2011). "When the court later interprets the plan, it interprets words on which it has already passed judgment." *Id.; see also In re Casse*, 198 F.3d at 333 ("The bankruptcy court [is] in the best position to interpret its own orders") (internal citations omitted). "A bankruptcy court's interpretation of its own order will not be disturbed absent a clear abuse of discretion." *In re*

---

been raised before the Confirmation Order was entered. *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 502 (2015) ("Confirmation has preclusive effect, foreclosing relitigation of 'any issue actually litigated by the parties and any issue necessarily determined by the confirmation order'") (citing 8 Collier ¶ 1327.02[1][c], at 1327-6); *see also Celli v. First Nat'l Bank of Northern New York (In re Layo)*, 460 F.3d 289, 294 (2d Cir. 2006) (noting "Congress' expressed intention that confirmation give debtors and creditors finality with respect to satisfaction of outstanding debt.") The time to litigate issues with respect to the terms of the Plan has long passed.

[5] *E.g.*, Confirmation Order ¶ 45 ("The requirements of Sections 365(b)(1) and 365(b)(f)(2) of the Bankruptcy Code are hereby deemed satisfied with respect to the Proposed Assigned Contracts listed on the annexed Schedule of Assumed Contracts (the "<u>Assigned Contracts</u>"), upon the Purchaser's satisfaction of the Cure Costs in connection with such Assigned Contracts.")

*Fiorano Tile Imports, Inc.*, 517 B.R. 409, 414 (E.D.N.Y. 2014) (internal quotations omitted). I find no abuse of discretion and defer to the bankruptcy court's interpretation.

Contrary to the Litigation Administrator's assertion, no additional evidence was necessary in order for the contracts to be assumed, and thus summary judgment was proper. Once the Confirmation Order was entered and the Effective Date occurred, the contracts were assumed and no further agreements or acts in the future were required. *See In re Mushroom Transp. Co.*, 78 B.R. 754, 761 (Bankr. E.D. Pa. 1987) ("Unless the court approves of a different arrangement, a lease [or executory contract] is assumed once court approval is obtained"); *In re Bourbon Saloon, Inc.*, Nos. 14-395, 14-398, 2015 WL 1245566, at *13 (E.D. La. Mar. 18, 2015) (same). In submitting the proposed Plan to the bankruptcy court, Debtors could have reserved their right to reject certain executory contracts after the Plan was confirmed. The Plan does not include any such reservation. *Cf. In re UAL Corp.*, 635 F.3d at 319 (no assumption where the plan included an "explicit reservation of [the debtor's] right to reject" the executory contracts after plan confirmation). Although earlier proposals listing the assumed contracts provided a reservation of rights to buyer, the Schedule of Assumed Contracts annexed to the Plan, submitted to, and approved by the Bankruptcy Court, contains no reservation of rights provision.

In his reply, the Litigation Administrator raises the argument that the APA "expressly requires documentation evidencing the Purchaser's assumption" after the Confirmation Order became effective. Although I need not address an argument raised only in reply, the argument was considered on oral argument, and I conclude that it is meritless. The Litigation Administrator points to Section 9.2(a) of the APA, which provides that "[a]t or prior to the Closing, Sellers will deliver or cause to be delivered: (a) all of the Ancillary Documents [including Assumption and Assignment Agreements] to be executed and delivered by it and any other document contemplated

by this Agreement to be executed and delivered by Sellers . . . ." The Litigation Administrator argues that whether such agreements exist creates an issue of fact that precludes summary judgment. However, the Litigation Administrator mischaracterizes Section 9.2(a) of the APA as an obligation to enter into Assumption and Assignment Agreements, when it merely requires that the Debtors deliver such agreements to the Purchaser if they exist. As described earlier, the assumption of the Carrier Agreement occurred as of the Effective Date. Neither the APA, nor the Plan, nor the Confirmation Order imposes a requirement that anything additional occur, such as the signing of "Assumption and Assignment Agreements" as a condition to assumption. The Litigation Administrator cannot defeat summary judgment by creating a dispute of fact as to whether there was evidence of assumption after entry of the Confirmation Order because no such evidence was required to establish that the Carrier Agreement was assumed.

In sum, there is no dispute as to any material fact, and UPS is entitled to judgment as a matter of law.

## CONCLUSION

The bankruptcy court's order is affirmed and the appeal is dismissed. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

_____
**NINA GERSHON**
**United States District Judge**

April 22, 2024
Brooklyn, New York